UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

NAUM MOKSIN, et al.,                                    Case No. 1:12-cv-597
     Plaintiffs,                                         Litkovitz, M.J.


     vs.


UNITED STATES DEPARTMENT OF                    **ORDER**
AGRICULTURE, FOOD AND
NUTRITION SERVICE,
     Defendant.

     Plaintiffs Naum Moksin ("N. Moksin") and Elena Moksin ("E. Moksin") bring this action

for judicial review of a Final Agency Decision assessing a civil monetary penalty against them

under the Supplemental Nutrition Assistance Program (SNAP)[1] administered by the United

States Department of Agriculture, Food and Nutrition Service ("FNS").  (Doc. 2).  This matter is

before the Court on defendant's motion for summary judgment (Doc. 14) and plaintiffs' response

to the motion (Doc. 15) and supporting affidavit (Doc. 16).

## I. Procedural background

     Plaintiffs originally filed this action in state court.  Defendant removed the action to

federal court pursuant to 28 U.S.C. § 1442(a)(1), on the ground the lawsuit seeks to impose

liability on the Secretary of the United States Department of Agriculture ("USDA"), an officer of

the United States.  (Doc. 1).  The complaint challenges the FNS's assessment of a Transfer of

Ownership Civil Monetary Penalty on plaintiffs for selling their business, Yummie 2 Yummie,

---

[1] The federal Food Stamp Program was renamed the Supplemental Nutrition Assistance Program ("SNAP")
effective October 1, 2008.  *See* Food, Conservation, and Energy Act of 2008, Pub.L. No. 110-246, § 4001, 122 Stat.
1651, 1853.

LLC ("Yummie 2 Yummie"), after the business had been disqualified from participation in the Food Stamp Program. The complaint alleges that plaintiffs are entitled to judicial review of the Final Agency Decision issued by the FNS on June 30, 2012, holding the civil monetary penalty was proper pursuant to 7 C.F.R. § 279.7(a).[2]

Defendant FNS moves for summary judgment on plaintiffs' claim seeking to invalidate the Final Agency Decision. (Doc. 14). Defendant argues there is no genuine issue of fact that plaintiffs transferred ownership of their business, Yummie 2 Yummie, to another business, Eteri Market, LLC; therefore, imposition of the civil monetary penalty was proper in accordance with statutes and regulations that prohibit a retail store which has been permanently disqualified from participation in SNAP from transferring ownership of the store during the disqualification period and which subject the owner to a civil penalty for violating the prohibition. See 7 U.S.C. § 2021(e)(1); 7 C.F.R. § 278.6(f)(2)[3]. Defendant has filed the Agency administrative record ("A.R.") (Doc. 8) and other documentation in support of its motion for summary judgment. (Doc. 14, Exhibits).

In response, plaintiffs allege that the FNS's decision to assess the civil monetary penalty was not a valid administrative decision. (Doc. 15). Plaintiffs contend that there was no sale or transfer of ownership of their retail food store/deli, but instead they leased the deli following their disqualification from SNAP and the closing of their business.

---

[2] Title 7 C.F.R. § 279.7(a) provides, in pertinent part, that a disqualified firm "aggrieved by the determination of the designated reviewer may obtain judicial review of the determination by filing a complaint against the United States in the U.S. district court. . . ."

[3] In the event a retail store that has been disqualified from participation "is sold or the ownership thereof is otherwise transferred to a purchaser or transferee, the person or persons who sell or otherwise transfer ownership" of the store "shall be subjected to a civil penalty in an amount established by the Secretary through regulations to reflect that portion of the disqualification period that has not expired. If the retail food store or wholesale food concern has been disqualified permanently, the civil penalty shall be double the penalty for a ten-year disqualification period, as calculated under regulations issued by the Secretary." 7 U.S.C. § 2021(e)(1). The method for determining the amount of civil money penalties for transfer of ownership is set forth in 7 C.F.R. § 278.6(g).

## II. Undisputed facts

The following facts are undisputed: Plaintiff E. Moksin has resided in the United States since 1991. (Doc. 14, Exh. 1, E. Moksin Depo. Tr. 12). She earned a bachelor's degree in accounting before arriving in the United States and obtained an associate's degree in accounting after her arrival. (E. Moksin Depo. Tr. 14-15). She has worked in accounting for various local companies and her work experience includes preparing financial statements for small business owners in the restaurant field. (E. Moksin Depo. Tr. 16, 18-20).

Before creating the deli business Yummie 2 Yummie, plaintiff N. Moksin owned a deli located at 7523 Reading Road, which operated under the name Yummie Yummie. (E. Moksin Depo. Tr. 28). E. Moksin assisted her husband with all of the paperwork associated with creating that business. (E. Moksin Depo. Tr. 28-29). N. Moksin was responsible for entering into and signing the lease agreement for the building in which the deli was located, which was written in English. (E. Moksin Depo. Tr. 29-30).

Plaintiffs subsequently created the business Yummie 2 Yummie. (E. Moksin Depo. Tr. 30). They purchased a building located at 3227 Montgomery Road, Loveland, Ohio, in which to operate the business (Doc. 16, E. Moksin Aff.), which was in a neighborhood closer to the local Russian community. (E. Moksin Depo. Tr. 32-33). Through the business, they operated a deli. (E. Moskin Depo. Tr. 37-38). Although the new business (Yummie 2 Yummie) had a different name than the deli N. Moksin had previously owned and operated at 7523 Reading Road (Yummie Yummie), plaintiffs continued to use the name Yummie Yummie on the building at the new location so that customers would recognize the name. (E. Moksin Depo. Tr. 37-38). E. Moksin assisted her husband with the operation of Yummie 2 Yummie, including the handling of

3

all financial aspects of the business. (E. Moksin Depo. Tr. 22-23). E. Moksin began working at the deli full-time with her husband in 2007. (E. Moksin Depo. Tr. 20, 22).

On February 4, 2008, the FNS sent plaintiffs a letter charging them with numerous violations of the Food Stamp Program regulations, including accepting food stamps in exchange for ineligible items and for cash. (A.R. 7-10). Plaintiffs did not respond to the letter. (A.R. 11). On February 21, 2008, the FNS issued plaintiffs a notice of permanent disqualification from the Food Stamp Program. (A.R. 11-12). The letter advised plaintiffs: "In the event that you sell or transfer ownership of your store subsequent to your disqualification, you will be subject to and liable for a CMP [Civil Monetary Penalty]. . . ." (A.R. 12).

The Moksins closed their business in the fall of 2009. Within one day of the Moksins closing their business, Eteri Katsnelson opened a business at the same location. (Doc. 14, Exh. B, Katsnelson Depo. Tr. 21; E. Moksin Depo. Tr. 42). Katsnelson is the owner of Eteri Market, LLC (Eteri Market). (A.R. 13-15; Katsnelson Depo. Tr. 17). She has been a permanent resident of the United States since 1999 and is E. Moksin's sister-in-law. (E. Moksin Depo. Tr. 7; Katsnelson Depo. Tr. 8). Prior to arriving in the United States, she had obtained a degree in mechanical engineering and had owned and operated a small supermarket in Russia. (Katsnelson Depo. Tr. 14). After she opened her store at the Yummie Yummie location, she continued using the name Yummie Yummie in the operation of the business with N. Moksin's permission. (Katsnelson Depo. Tr. 28; E. Moksin Depo. Tr. 36). Katsnelson purchased her own food for the store when she opened her business. (Katsnelson Depo. Tr. 21, 35).

On or about October 14, 2009, Katsnelson applied for a food stamp license by submitting an electronic Supplemental Nutrition Assistance Program Application for Stores. (Doc. 14, Exh. C, Attach. 1 - Certification of Mike Skaer, FNS Section Chief). She submitted the application

under the store and corporation name "Eteri Market LLC." (*Id.*). Katsnelson was advised by the FNS that in order to complete the SNAP application, she was required to submit a certification and signature statement; a copy of her current licenses to do business at the location listed on the application; a copy of photo identification for all owners, partners, corporate officers or shareholders; and a copy of the social security card for each of these individuals. (Doc. 14, Exh. C, Skaer Certification, Attach. 2). The FNS received the documentation on or about October 27, 2009. (A.R. 13-15). In processing the application, the FNS determined that the location for the business had been permanently disqualified from participation in SNAP. (A.R. 21). Consequently, the application was returned to Katsnelson with a letter advising her that the FNS was unable to process her application for this reason. (*Id.*). The letter advised Katsnelson that as a "new owner of a disqualified location," she was required to provide documentation that: "1) owners of the firm were not involved in the violations leading to disqualification of the prior owner; 2) current owners of the firm were not part owner or involved in management of the firm during the time the violations occurred; 3) the old owner, and any managers or other personnel involved in the violations, have no further financial interest in the firm and will not work in the firm; and 4) a copy of at least one of the following documents: bill of sale, conditional sales contract, or incorporation papers, which show that there was a bona fide transfer of ownership." (*Id.*).

In response, Katsnelson provided the following to the FNS: 1) a statement that as a new owner of a disqualified location, she was not involved in the violations leading to the disqualification of the prior owner and was not part of the ownership or management of the firm during the time the violations occurred (A.R. 22); 2) a statement that the prior owner and any managers or other personnel involved in the violations had no further interest in the firm and

5

would not be hired or be on the payroll of the firm (A.R. 23); and 3) a copy of a document titled

"CONTRACT FOR SALE AND PURCHASE OF BUSINESS" executed on October 21, 2009,

by N. Moksin as representative for the seller, Yummie 2 Yummie, and Katsnelson as

representative for the buyer, Eteri Market (A.R. 16-20; E. Moksin Depo. Tr. 52; Katsnelson

Depo. Tr. 27).  The contract included the following terms:

> 1. PURCHASE PRICE AND METHOD OF PAYMENT.  Buyer shall pay and Seller
> shall accept the purchase price for the business in the manner of payment of $3,000.00
> per month for a period of 48 months.

> EXHIBIT "A"
> PROPERTY DESCRIPTION
> All assets associated with or relating to that certain business establishment known and
> commonly referred to as 'Yummie 2 Yummie' located at 3227 Route 22&3 . . .
> including, but not limited to: the trade name 'Yummie-Yummie,' all leasehold
> improvements, inventory, fixtures . . . good will . . . and any and all other items normally
> considered and commonly referred to as assets. . . .

> EXHIBIT "B"

> AMOUNT AND PAYMENT OF PURCHASE PRICE

> a. CONSIDERATION As total consideration for the purchase and sale of the
> property, the Buyer shall pay to the Seller the sum of ($3,000.00 per month) for a
> period of 48 months, such total consideration to be referred to in this Agreement
> as the "Purchase Price".  Total sales price of business is $144,000.

> b. PAYMENT.  The Purchase Price shall be paid as follows:

> i.  Dollars ($3000.00) to be paid to Seller upon execution of this contract;

> ii.  Cashier's or certified check from Buyer in the sum of $3000.00 Dollars to be
> delivered to Seller at closing.

On January 30, 2012, plaintiffs were advised that they were being assessed a civil penalty

in the amount of $54,000.00 for selling their business.  (A.R. 24).  On February 7, 2012,

plaintiffs, through counsel, requested a review of the assessed penalty on the grounds that

plaintiffs had not sold the assets of their business but instead had leased the premises at 3227

Montgomery Road to a new tenant for four years at the rate of $3,000.00 per month, and 2) when the new tenant became unable to fulfill the terms of the 48-month lease, plaintiffs entered into another lease agreement with a new tenant, Gregory Rotbart, effective January 9, 2012. (A.R. 28-29). Plaintiffs also asserted that the first tenant had applied for and received authorization to participate in SNAP under the name Eteri Market, LLC, and the second tenant had applied for authorization to participate in SNAP. (*Id.*). On February 10, 2012, the government issued an amended assessment of $56,640.00 due to an error in the calculation of the civil monetary penalty. (A.R. 33).

On March 5, 2012, plaintiffs' lawyer wrote a supplemental letter to the FNS acknowledging that the document "which purported to be a sale of contract" on which the USDA had presumably relied as the sole basis for assessment of the civil monetary penalty "appear[ed] on its face to be a sale contract"; however, it was actually a 48-month lease. (A.R. 43). Counsel stated that the real estate where Yummie 2 Yummie was operated was owned by plaintiffs, and counsel submitted an auditor's property summary showing that Yummie 2 Yummie LLC owned the property as of January 2012. (A.R. 43, 47). Counsel stated that the purported sales contract had been prepared by a lay person; there was no allocation for inventory and fixtures; there was no separate lease agreement; and when the Moksins ceased operation of their business due to their disqualification from SNAP, Eteri Market leased the real estate and began its business under its name. (A.R. 43-44). Counsel attached Eteri Market's vendor's license to the letter. (A.R. 53). Counsel also alleged that when Eteri Market ceased its operations, the Moksins entered into a new lease with an individual, Gregory Rotbart, for the same location. (A.R. 44). Counsel subsequently submitted an affidavit by Katsnelson in which she stated that she had

leased the premises and had not purchased the inventory, fixtures, or goodwill from the previous owners of the real estate. (A.R. 74-75).

On June 20, 2012, a Final Agency Decision was issued supporting the initial determination to assess the penalty. (A.R. 83-89). On July 19, 2012, plaintiffs requested judicial review of the Final Agency Decision pursuant to 7 C.F.R. § 279.7(a) in the Warren County, Ohio Court of Common Pleas. (Doc. 2). The FNS subsequently removed the action to this Court.

### III. Matters in dispute

The parties' dispute centers on whether the circumstances surrounding the closing of the Moksins' Yummie Yummie store and operation of the subsequent retail establishment by Kastnelson evidences a sale or transfer of the plaintiffs' business or a lease agreement. The FNS contends that the contract establishes that the Moksins sold their business to Katsnelson. The Moksins contend that the contract was a rental agreement pursuant to which Katsnelson agreed to pay rent of $3,000.00 per month, believing she would be able to participate in SNAP herself. (Doc. 15 at 2, citing A.R. 72). Plaintiffs allege that after the FNS determined that the "actual physical location had been flagged as having been permanently disqualified from accepting SNAP assistance" and Katsnelson was informed that she would have to provide proof of a "bona fide transfer of ownership" and a "bill of sale of the business," the Moksins took it upon themselves to assist Katsnelson. (*Id*. at 2-3). Plaintiffs state that acting without a lawyer's assistance, they downloaded a contract template from the internet and filled out the form so as to put into writing the lease agreement they had reached earlier and to "appease FNS with regard to the documents Katsnelson needed." (*Id*. at 3, citing generally, E. Moksin 2/19/13 Affidavit). As evidence that the agreement was a lease and not a contract, plaintiffs assert that Katsnelson brought her own food and inventory to the location (Katsnelson Depo. Tr. 30; Katsnelson Aff.,

8

A.R. 75); even though she closed her business before the end of the lease, the Moksins did not penalize her for the early lease termination; she left behind the fixtures and other equipment when she left the premises; and the Moksins were able to find another tenant to lease the premises in January of 2012. (*Id.* at 3, citing Commercial Lease Agreement between plaintiffs and Gregory Rotbart, A.R. 54-67).

### IV. Governing law

### A. Summary judgment standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action. The court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)). However, a district court need not view the facts in the light most favorable to the nonmoving party if that party's version of events is "blatantly contradicted by the record, so that no reasonable [fact-finder] could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a [fact-finder]

to return a verdict for that party. *Id.* (citing *Cities Serv.*, 391 U.S. at 288-289). If the evidence is merely colorable, *Dombrowski v. Eastland*, 387 U.S. 82, 84 (1967), or is not significantly probative, *Cities Serv.*, 391 U.S. at 290, judgment may be granted. *Anderson*, 477 U.S. at 249.

**B. SNAP**

The Food and Nutrition Services division of the USDA administers SNAP. *See* 7 U.S.C. § 2011, *et seq.*; 7 C.F.R. § 271.3. Under the program, families receive food stamp allotments which may be used to purchase food items at authorized retail food stores. 7 U.S.C. § 2013. SNAP benefits are delivered through electronic benefit transfer ("EBT") cards, which operate in a similar manner to debit cards. *Alkabsh v. United States*, 733 F. Supp.2d 929, 932 n.1 (W.D. Tenn. 2010) (citing 7 U.S.C. § 2016(h)). Pursuant to SNAP regulations, retail food store owners may not accept EBT benefits as payment for ineligible items, such as non-food items and some prepared hot food items. 7 C.F.R. § 271.2. The regulations also preclude retail food store owners from exchanging EBT benefits for cash. *Id*.

Title 7 C.F.R. Parts 278 and 279 provide for a system of administrative and judicial review if an investigation results in an agency action to disqualify a store from participation in SNAP or to assess a civil monetary penalty on the owner. In the event a retail store that has been disqualified from participation in SNAP "is sold or the ownership thereof is otherwise transferred to a purchaser or transferee, the person or persons who sell or otherwise transfer ownership" of the store "shall be subjected to a civil penalty in an amount established by the Secretary through regulations to reflect that portion of the disqualification period that has not expired. If the retail food store . . . has been disqualified permanently, the civil penalty shall be double the penalty for a ten-year disqualification period, as calculated under regulations issued by the Secretary." 7 U.S.C. § 2021(e)(1). Title 7 C.F.R. § 278.6 sets out the method for

calculating the civil penalty.  The circumstances under which permanent disqualification is

mandated are set forth in 7 U.S.C. § 2021(b)(3)(B).

The civil monetary penalty is intended "to preserve the integrity of the food stamp

program by 'deter[ring] Program abuses by stores.'"  *Anton v. United States*, 225 F. Supp.2d

770, 778 (E.D. Mich. 2002) (citing *Thakor v. United States,* 55 F.Supp.2d 1103, 1111 (D. Nev.

1999) (citing S. Rep. 99-145 (1985) and H.R. Rep No. 99-271(I) (1985)).  The civil monetary

penalty functions to "prevent [ ] illicit transfer of ownership in order to evade the sanctions of the

statute.  If no transfer penalty were imposed, [a store owner] could nominally sell his business

while retaining de facto control over the enterprise."  *Id*. (citing *Traficanti v. United States,* 227

F.3d 170, 176 (4th Cir. 2000); *Objio v. United States,* 113 F. Supp.2d 204, 209 (D. Mass. 2000)

("noting 'that Congress' primary concern was that store owners would seek to evade

disqualification by selling the store or otherwise transferring its ownership to a third party")).

The transfer penalty is intended to address, inter alia, the problem of "fictitious sales of stores,

often to family or friends, to evade disqualification" and the avoidance of penalties through the

sale or transfer of disqualified stores.  *Objio* 113 F. Supp.2d 209-210.

A Final Agency Decision issued by the USDA is subject to judicial review.  7 U.S.C. §

2023(a)(13).  The suit "shall be a trial de novo by the court in which the court shall determine the

validity of the questioned administrative action in issue[.]"  7 U.S.C. § 2023(a)(15); *Goldstein v.

United States*, 9 F.3d 521, 523 (6th Cir. 1993).  In conducting this review, "[a] district court is to

make its own findings based upon the preponderance of the evidence and not limit itself to

matters considered in the administrative proceeding."  *Warren v. U.S.*, 932 F.2d 582, 586 (6th

Cir. 1991).  First, the Court must determine "if there were violations of the Act, and if there

were, to what extent violations did occur and under what circumstances."  *Woodard,* 725 F.2d at

11

1076. Second, the Court determines "whether administrative action taken with respect to violations found, properly complied with the authority granted under the law and reasonable regulations." *Id.* Plaintiff bears the burden of proof to establish by a preponderance of the evidence that the administrative action was invalid. *Warren*, 932 F.2d at 586 (citing *Goodman v. United States*, 518 F.2d 505, 507 (5th Cir. 1975)). *See also McClain's Market v. United States*, 411 F. Supp.2d 772, 776 (N.D. Ohio 2005).

While the Court's review of the FNS's administrative action is de novo, its review of any subsequent sanction is limited:

> Once the trial court has confirmed that the store has violated the statutes and regulations, the court's only task is to examine the sanction imposed in light of the administrative record in order to judge whether the agency properly applied the regulations, *i.e.*, whether the sanction is "unwarranted in law" or "without justification in fact."

*Goldstein*, 9 F.3d at 523 (quoting *Woodard v. United States*, 725 F.2d 1072, 1077 (6th Cir. 1984)). In other words, "[t]he trial de novo is limited to determining the validity of the administrative action; the severity of the sanction is not open to review." *Id.*

Although the Court's de novo review is limited to determining the validity of the administrative action, the Court is not restricted to examining the administrative record. *Main & Champ Food & Deli, Inc. v. United States*, No. 2:10-cv-00145, 2011 WL 3739050, at *3 (S.D. Ohio Aug. 24, 2011) (citing *Warren*, 932 F.2d at 586). On the other hand, courts have rejected the notion that "de novo" review under § 2023(a)(15) requires that a "district court proceed as if no agency action had been taken." *Hanna v. United States*, No. 04-74627, 2007 WL 1016988, at *4 (E.D. Mich. Mar. 30, 2007) (citing *Redmond v. United States,* 507 F.2d 1007, 1011 (5th Cir. 1975)). Rather, while the district court is not "bound by the administrative record," the agency's decision is presumed to be valid and must stand "unless the plaintiff proves that it should be set

aside." *Redmond,* 507 F.2d at 1011-12; *see also McCray v. United States,* 511 F. Supp. 205, 209 (E.D. Mich. 1981). "Juxtaposing this substantive standard with ordinary summary judgment principles, [the p]laintiff may withstand [the d]efendant's motion by 'rais[ing] material issues of fact as to each of the violations charged against' the [plaintiff]." *Hanna*, No. 04-74627, 2007 WL 1016988, at *4 (citing *Kahin v. United States,* 101 F. Supp.2d 1299, 1303 (S.D. Cal. 2000)).

There are few published cases that address the assessment of a penalty for the "transfer" of a business following permanent disqualification of the store from participation in the food stamp program pursuant to 7 U.S.C. § 2021(e)(1) and 7 C.F.R. § 278.6(f)(2). The FNS cites the case of *Huggins v. United States*, 858 F. Supp.2d 694, 699 (N.D. Miss. 2012), which defendant asserts is inapposite to the present case in pertinent respects, to argue that the FNS validly imposed a penalty on plaintiffs for transferring ownership of their business to Katsnelson. In *Huggins*, the plaintiff petitioned for review of the USDA's decision finding he had violated 7 C.F.R. § 278.6(f)(2) by selling or transferring ownership of his grocery during his permanent disqualification from participation in the food stamp program, contending instead that he had leased his building to his relative. *Id*. at 699. The Final Agency Decision in *Huggins* expressly acknowledged that the plaintiff had not sold his store to the new owner and that there was "a lease agreement for a new owner at the same location"; nonetheless, the USDA found the lease agreement was "still a legitimate store transfer" which was subject to a civil monetary penalty under the regulations. *Id*. at 704. The court found there was insufficient factual evidence to support the FNS's finding that a "transfer" as defined under the applicable law had occurred when the plaintiff leased his empty building, which had previously housed his grocery store business, to a relative. The factual evidence on which the court relied included evidence that the plaintiff had closed the grocery store's bank account; a letter from the plaintiff's tax preparer

stating that the plaintiff had closed his business in accordance with IRS guidelines for dissolving a business, after which no other business was done by the store; a letter from the town mayor personally attesting that the grocery store had closed; documentation showing the building stayed vacant for some time before the plaintiff leased it to his relative; the lease agreement and a tax permit supporting the plaintiff's contention that he received monthly rent of $200.00; and representations by the plaintiff that upon entering into the lease agreement he sold the store's equipment and inventory so that only the empty shell of the building remained, the tenant purchased her own inventory, and the new tenant may have set up her own tax identification number. *Id.* at 701, 704.

The *Huggins* court considered several cases which upheld on judicial review the assessment of a civil monetary penalty for the transfer of a disqualified business. In one such case, *Estremera v. United States,* 442 F.3d 580 (7th Cir. 2006), the store owner petitioned for review of a civil monetary penalty on the grounds she had not sold ownership of the business, the sale was never completed, and the would-be purchaser had never intended to follow through on the sale. The *Estremera* court found the FNS had ample evidence of the sale, including: "(1) a consent action agreement signed by the store owner to sell the store to a purchaser; (2) a bill of sale for the store; (3) a real estate closing statement confirming the sale; (4) an affidavit attesting to the sale of the store; (5) a mortgage note signed by the purchaser; (6) a lease between the store owner and the purchaser; and (7) the store owner's signed admission that she had sold the store." *Id.* at 583-84. In another case, *Thakor v. United States,* 55 F. Supp.2d 1103 (D. Nev. 1999), a civil monetary penalty imposed by the FNS was upheld based on evidence of the sale of the business which included escrow instructions declaring that the store owner was "transferring all the property, materials, supplies, merchandise, equipment, or other inventory of [his store], along

14

with the name, goodwill, tenant improvements and a covenant not to compete, in exchange for a total consideration of $30,000." *Id.* at 1106 (internal quotation marks omitted). The *Huggins* court distinguished these cases on the ground that the FNS in each case was confronted with evidence supporting the store owner's sale or transfer of ownership in his business, whereas evidence of a transfer was lacking in the case before the court. *Huggins*, 858 F. Supp.2d at 704-05.

### V. Resolution

The issue before the Court in connection with the FNS's motion for summary judgment is whether plaintiffs have shown by a preponderance of the evidence that the FNS's decision that plaintiffs sold or otherwise transferred their business to Katsnelson is wrong. Given the unusual factual posture of this case, the Court is unable to assess on summary judgment the validity of the FNS's decision. The FNS has presented evidence that indicates a bona fide transfer of ownership of plaintiffs' business occurred, so as to support the imposition of the civil monetary penalty on plaintiffs. Plaintiffs have presented evidence that calls into question whether a bona fide transfer of ownership of their business occurred and which, if accepted as true, supports a finding that they leased their business to Katsnelson. The conflicts in the evidence of record cannot be resolved on summary judgment. The determination of whether a bona fide transfer occurred hinges, in part, on the credibility of the parties involved in the transaction, which the Court is unable to assess on summary judgment. Accordingly, because the record before the Court shows there are genuine factual issues surrounding the underlying violation which gave rise to the civil monetary penalty, summary judgment in favor of the FNS is not warranted.

**IT IS THEREFORE ORDERED THAT:**

Defendant's motion for summary judgment (Doc. 14) is DENIED. This matter will proceed to trial in accordance with the schedule to be established by the Court.

Date: 11/4/13

Karen L. Litkovitz
United States Magistrate Judge

16